No. 48,176

STATE OF KANSAS, *Appellee*, v. ROBERT JOSEPH MOORE, *Appellant*.

(556 P. 2d 409)

Opinion filed November 6, 1976.

*Orville J. Cole,* of Garnett, argued the cause, and *Wayne Loughridge,* of Garnett, was on the brief for the appellant.

*Philip A. Harley,* Assistant Attorney General, argued the cause, and *Curt T. Schneider,* Attorney General, and *Terry Jay Solander,* County Attorney, were on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: In a trial to a jury, on two counts, defendant-appellant, Robert Joseph Moore, was convicted on count one of the theft of fifty sheets of plywood, valued at more than $50.00 (K. S. A. 21-3701), and on count two of unlawful deprivation of property consisting of a 1975 Ford pickup truck with camper shell, with the intent to deprive the owner of the temporary use thereof (K. S. A. 21-3705).

The main issue on appeal challenges the trial court's refusal to instruct the jury on what defendant contends is a lesser included offense of the felony theft count—to wit: the unlawful temporary deprivation of the plywood, but not with the intent of depriving the owner permanently of the possession, use, or benefit of the property.

The state's evidence disclosed that on the night of January 12, 1975, Lawrence Kellerman, Chief of Police of Garnett, began surveillance of the Garnett Church Furniture and Manufacturing Company. Defendant worked as a night watchman for the company and was scheduled to begin his eight-hour watch at midnight on the date mentioned.

Chief Kellerman testified that about 11:55 p. m., on the night in question, he saw the defendant park his car in front of the factory

and go inside. He had previously observed a 1975 Ford pickup, off-white in color, with camper shell closed, also parked in front of the factory. The Ford pickup was later identified as a company owned vehicle.

Wayne Clinesmith, a laborer and night watchman on the 4:00 p. m. to the midnight shift, was the man defendant was scheduled to replace on the night in question. He testified that when he arrived at work at 4:00 p.m. he observed the light-colored pickup truck parked by the factory. Clinesmith corroborated Kellerman's testimony that the tailgate and camper shell were closed on the pickup.

Kellerman went on to testify that soon after defendant's arrival he saw Clinesmith and defendant emerge from the factory together. After Clinesmith entered his car and drove off, defendant opened the right rear door of his own car and a man, later identified as Edward Gunn, got out.

Gunn and the defendant went inside the building for a short time and then came back outside and got into the furniture company's Ford pickup. The pickup was driven to the back of the factory and reappeared about five minutes later at the front of the building with the endgate and camper door open. After backing the pickup up to the factory door, on the front of the building, defendant and Gunn began unloading items from the pickup and carrying them into the factory. The two men then got back into the cab and drove the pickup around to the rear of the building.

Kellerman thereupon changed his vantage point to the rear of the factory building where he observed the same pickup truck backed up to the loading dock. From his position he saw defendant and Gunn loading sheets of plywood into the pickup truck through a door which opened onto the loading dock.

After a few minutes Kellerman returned to his original surveillance point in front of the factory. He saw the truck reappear from behind the factory, fully loaded with sheets of plywood which extended beyond the endgate of the pickup. Gunn was at the wheel of the truck and the endgate and camper door were open. Defendant then came out of the front door of the factory, got into the driver's seat of the pickup, and he and Gunn drove away from the factory.

The pickup truck was stopped by the city police three or four miles east of Garnett on orders of Chief Kellerman. Thereupon,

defendant and Gunn were arrested, taken back to Garnett, and placed in jail.

Defendant testified in his own defense. His version of the facts differed substantially from that of the state's witnesses. He admitted the unauthorized taking of the pickup truck, but denied loading the plywood on the truck. According to defendant the plywood was already on the truck when he arrived at the factory. Defendant also denied being accompanied by anyone when he drove to work that evening.

Defendant further testified an acquaintance of his, Edward Gunn, came to the factory shortly after midnight and asked defendant to drive him to the Gunn residence in Parker, a neighboring town ten or twelve miles northeast of Garnett. Defendant admitted he had no authority to use the pickup truck on this occasion, but took it anyway because his own car was low on gas and in bad mechanical condition. Defendant insisted, when arrested, he was merely taking Gunn home in the company pickup truck and that he had no intention of taking the plywood permanently from the furniture factory.

Under this set of facts, counsel for defendant requested an instruction on the offense of unlawful exercise of control over the plywood without the intent permanently to deprive the owner of the use or benefit thereof. The request was denied and the ruling is specified as error in defendant's first two points on appeal.

Defendant supports his position with the argument that he was entitled to have the theory of his case presented to the jury under appropriate instructions, citing *State v. Severns,* 158 Kan. 453, 148 P. 2d 488; and *State v. Barnes,* 164 Kan. 424, 190 P. 2d 193. As an abstract proposition defendant's premise cannot be faulted. The rule involved has long been recognized by this court. In the recent case of *State v. Boyd,* 216 Kan. 373, 532 P. 2d 1064, we held:

"The accused has the right to have his theory of the case presented to the jury under appropriate instructions where there is support in the evidence therefor. This is true even though the evidence may be weak and not conclusive and the testimony of the defendant alone, if it tends to show a lesser degree of crime." (Syl. 1.)

However, with respect to instructing on a lesser included offense, the rule is qualified in that it becomes applicable only where it is clearly called for by the evidence and where the jury might reasonably have convicted the accused of a lesser crime had it been instructed with regard thereto. (*State v. Schoenberger,* 216 Kan.

464, 532 P. 2d 1085; *State v. Pyle,* 216 Kan. 423, 532 P. 2d 1309; and *State v. Masqua,* 210 Kan. 419, 502 P. 2d 728, cert. den., 411 U. S. 951, 36 L. Ed. 2d 413, 93 S. Ct. 1939.)

In the instant case the defendant's entire defense was completely exculpatory as to the plywood. He testified the plywood was already on the truck; that he had not put it there; and that its presence was only incidental to his unlawful taking of the truck which he admitted. Thus, the evidence furnished no rational basis for a conviction of temporary deprivation of the plywood. Under such evidence, the requested instruction was not only unnecessary, but would have been duplicitous. (See, *e. g., State v. Schoenberger,* supra; and *State v. Masqua,* supra, and cases cited therein.)

The temporary taking of the pickup and the temporary taking of the plywood, as testified to by defendant, if believed, would have constituted mere parts of a single indivisible misdemeanor stemming from a single incriminating intent. The temporary taking of the truck and the plywood could not have been separated for prosecution as to each since, under defendant's testimony there was but one offense—the taking of the truck. (*State v. Green,* 213 Kan. 547, 516 P. 2d 926.) Defendant was either guilty of the theft of the plywood because he had the requisite intent or he was not guilty of any crime with respect to the plywood.

The sole issue before the jury on the plywood felony theft count was whether to believe defendant's testimony or that of Chief Kellerman. The jury chose to believe Kellerman's testimony from which the requisite intent on the part of defendant could readily be inferred.

In his final point on appeal defendant contends the trial court erred in sentencing him under K. S. A. 21-4504. Defendant's argument on this point is that there was insufficient admissible evidence to identify him with the exhibits of other convictions used to enhance the sentence. The defendant was identified as the person convicted of the prior crimes by John J. Cahill, a United States Probation and Parole Officer. Defendant contends that much of Mr. Cahill's testimony was hearsay. Defendant lodged an objection on that ground at the sentencing stage of the trial.

Although Mr. Cahill was not personally present in any of the three courts at the time defendant was previously convicted, he testified that he was personally acquainted with defendant in conjunction with his official duties as a parole officer. He indicated

the defendant was the Robert Joseph Moore referred to in the certified copies of the journal entries of prior convictions. A Missouri Department of Corrections fingerprint chart in defendant's name was also introduced in conjunction with the documents showing prior convictions.

Mr. Cahill properly identified defendant as the person referred to in the documents mentioned and the documents themselves were properly admitted to prove the convictions under K. S. A. 60-460 (*o*) as an exception to the hearsay rule. Moreover, the identity of the names of all of the exhibits was sufficient to establish defendant's identity as the person convicted thereby in the absence of rebuttal testimony. In disposing of a similar question in *State v. Cippola*, 202 Kan. 624, 451 P. 2d 199, cert. den., 396 U. S. 967, 24 L. Ed. 2d 432, 90 S. Ct. 446, we said:

". . . [W]e hold that proof beyond the identity of the name therein was not a necessary part of the state's foundation for their admission in evidence, there being an absence of rebuttal evidence or a denial of identity. . . ." (p. 629.)

We find no error shown and the conviction and sentence are affirmed.