(634 P.2d 1137)
No. 50,216

STATE OF KANSAS, *Appellee,* v. WILLIAM E. JOHNSON, *Appellant.*
Petition for review denied December 9, 1981.

Opinion filed October 15, 1981.

*Russell Shultz,* of Shultz, Fisher, Monnat & Shultz, of Wichita, for appellant.

*Geary N. Gorup,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before FOTH, C.J., REES and PARKS, JJ.

REES, J.: Defendant appeals from his jury trial convictions and sentences on one count of aggravated assault (K.S.A. 21-3410[a]), a class D felony, and two counts of criminal damage to property (K.S.A. 21-3720[1][a]), a class A misdemeanor. The material issues argued to us concern the aggravated assault conviction and sentence.

The facts and trial court proceedings may be summarized. The defendant and his wife reside on a small rural acreage between the towns of Rose Hill and Douglass in Butler County. Accumulated old vehicles and vehicle parts lie in the open on their property. The premises have the appearance of a junkyard or salvage yard.

Defendant experienced thefts. When these incidents were discussed with the sheriff, defendant was told nothing could be done unless a perpetrator was "caught in the act."

On the afternoon of December 14, 1977, a van occupied by two young men, "Calvin" and "Bill," entered defendant's property through an open driveway gate in the fence surrounding the

premises. Calvin parked the van in the driveway before reaching a low barricade near defendant's house. Calvin and Bill alighted and proceeded on foot, stepping over the barricade and a low single wire fence, to a flat bed trailer on which there was a pickup "topper." They inspected the "topper" and then returned to and entered the van. Calvin and Bill did not have permission to enter or remain on defendant's property; they did not go to defendant's house or in any other way seek permission.

The defendant, who was in his house, heard the van stop. He saw Calvin and Bill walking toward and while they were at the "topper." He went to the parked van. He saw an ammunition clip lying on the van console. He went back into his house and armed himself with a .22 caliber handgun. All of this was prior to the return of Calvin and Bill from their inspection tour.

After Calvin and Bill entered their van, defendant came out of his house, went to the rear of the van, fired three rounds into the left rear tire, and fired at or into the right rear tire. He then went to the front of the van. While still brandishing his weapon, defendant ordered Calvin and Bill to get out and to lie on the ground. He went back into the house. He sent his wife to telephone the sheriff to report the incident and for assistance of law enforcement officers. (There was no telephone in the house.) Defendant returned to where Calvin and Bill lay on the ground. He ordered them to change their positions. During the course of events and when Calvin was at or toward the rear of the van, defendant fired once again, either into the ground or into the van's right rear tire. After that, Calvin escaped while defendant was at the front of the van. Calvin ran to a nearby residence where he telephoned for the assistance of law enforcement officers. Although defendant saw Calvin running from the scene, he did not shoot at him as he fled.

Eventually three officers, one with Calvin in tow, came to the scene. Calvin, Bill and the van were searched. The ammunition clip, a handgun and a quantity of marijuana were found in the van. Nothing of defendant's was found. No arrests were made. Defendant, Calvin and Bill were told to contact the county attorney's office the next day if they wished to file complaints.

Nine days later, the county attorney commenced this prosecution by filing a six-count information. There was a preliminary hearing. Defendant was bound over for trial on five counts. An amended information was filed. Defendant was tried to a jury. It returned the convictions underlying this appeal.

Included within the jury instructions was an appropriate instruction setting forth the elements of the alleged offense of aggravated assault on Calvin by defendant (K.S.A. 21-3410 [a]; PIK Crim. 56.14), as well as appropriate instructions setting forth defendant's claims of justification—use of force in defense of property other than a dwelling (K.S.A. 21-3213; PIK Crim. 54.19) and use of force in making an arrest by a private person not summoned by a law enforcement officer (K.S.A. 21-3216[1]; K.S.A. 21-3215[1]; PIK Crim. 54.24). In addition to and in accord with defendant's claims in defense of the charges against him, there was an instruction setting forth the elements of the purported misdemeanor offense of criminal trespass by Calvin and Bill. K.S.A. 21-3721; PIK Crim. 59.25. The instruction on K.S.A. 21-3213 was as follows:

"No. 13

"You are instructed that *a person* lawfully in possession of property, other than a dwelling, *is justified in threatening to use or using such force* to stop an unlawful interference with such property *as would appear necessary to a reasonable man under the circumstances then existing.*" (Emphasis added.)

The instruction on K.S.A. 21-3216(1) and K.S.A. 21-3215(1) read:

"No. 16

"You are instructed that a private person who makes a lawful arrest need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. He is justified in the use of any force which he reasonably believes to be necessary to effect the arrest and of any force which he reasonably believes to be necessary to defend himself from bodily harm while making the arrest.

"However, *he is justified in using force likely to cause death or great bodily harm only when he reasonably believes that such force is necessary to prevent death or great bodily harm to himself or another.*" (Emphasis added.)

There is no claim of error in the jury instructions.

The prosecution presented this case to the trial court and argued it to the jury on the theory that defendant's conduct constituted aggravated assault that was not justified because it was excessive conduct under the circumstances. In other words, the theory of the prosecution was that defendant's conduct exceeded that permitted a private citizen in defense of property of his which is other than his dwelling and exceeded that permitted a private citizen when making a "citizen's arrest." See K.S.A. 22-2403; K.S.A. 21-3216.

The authors of Pattern Instructions for Kansas—Criminal say K.S.A. 21-3213 is the only statute which makes the "reasonable man" the standard as relates to force. PIK Crim. Comment, p. 95. K.S.A. 21-3216(1) and K.S.A. 21-3215(1) make the reasonable belief of the actor the standard as relates to force. Definition and application of those standards under the facts of a particular case are uniquely matters for resolution by the trier of fact; that is, a job for the jury. We cannot find in the case before us that there was no substantial competent evidence to support the implicit jury conclusion that excessive force was threatened or used by the defendant. Accordingly, we cannot hold that as a matter of law the defendant was not guilty of aggravated assault.

The serious and substantial complaint on appeal concerns the imposition of defendant's aggravated assault sentence under K.S.A. 1977 Supp. 21-4618, the "firearm" or "mandatory sentencing" statute.

The defendant appeared before the trial judge for sentencing on April 17, 1978. Upon the recommendation of the county attorney and at the request of defense counsel, the trial judge suspended the imposition of sentences as he and trial counsel believed was permissible under K.S.A. 1977 Supp. 21-4603(2)(*d*). The circumstances of his recommendation of a suspended sentence are explained in the county attorney's brief on this appeal. He informs us that:

"At the time of . . . sentencing . . . the trial court and counsel did not have the benefit of the Kansas Supreme Court's ruling in *State v. Stuart and Jones,* 223 Kan. 600, 575 P.2d 559 (Opinion filed February 25, 1978). The prosecution trial counsel (also counsel for Appellee herein) disagreed with the legislative philosophy behind K.S.A. 21-4618 which required a trial court to deny probation to any offender convicted of a crime against persons in which a firearm was used regardless of the aggravating or mitigating circumstances of the offense and such other factors as the trial court could ordinarily take into consideration upon the issue of probation. The prosecutor did not feel that the interests of justice would be served by the imposition of a mandatory minimum sentence which would require this Defendant to serve one year in the state prison. The prosecution believed that the conviction of the Defendant and a supervised probation would adequately serve the interests of justice in this case; the Defendant (and the community-at-large) needed to be aware that there are statutory limits to the amount of force that can be used by a private citizen in protecting non-dwelling property and in making misdemeanor arrests. No further purpose would be served by requiring the Defendant to serve time in prison. The trial prosecutor in an effort to avoid the blind application of K.S.A. 21-4618, and being without the benefit of the interpretation of that statute in *State v. Stuart and Jones,*

*supra*, advised defense counsel that should the prosecution prevail at the Motion For a New Trial, that the State of Kansas would recommend that the trial court suspend the imposition of sentence (which was in good faith believed by the prosecutor to be a legitimate and proper means of avoiding K.S.A. 21-4618)."

Under the circumstances of this case and being aware of the language of K.S.A. 1977 Supp. 21-4618, we can understand that the trial judge and counsel may have viewed *Esters v. State,* 1 Kan. App. 2d 503, 571 P.2d 32 (1977), with uncertainty.

In February, 1979, the opinion of the Supreme Court in *State v. Stuart and Jones,* 223 Kan. 600, 575 P.2d 559 (1978), came to the attention of the prosecutor. He filed a "Motion for Correction of Sentence." Substantial time was afforded the parties for research and inquiry. The motion finally came on for hearing on April 5, 1979. The trial judge ruled that the April 17, 1978, disposition of defendant's aggravated assault conviction pursuant to K.S.A. 1977 Supp. 21-4603(2)(*d*), the suspension of sentence, should be corrected as authorized by K.S.A. 22-3504. The latter statute provides that the trial court may correct an illegal sentence at any time. The April 17, 1978, action was vacated. The trial judge found that the defendant had used a firearm in the commission of aggravated assault. Defendant was sentenced to serve a term of imprisonment of not less than one year nor more than ten years, the minimum authorized sentence of imprisonment for aggravated assault. K.S.A. 21-3410(*a*); K.S.A. 21-4501(*d*).

In *Esters v. State,* 1 Kan. App. 2d 503, a divided panel of this court held that if K.S.A. 1976 Supp. 21-4618 applied, neither probation nor suspension of sentence was an authorized disposition available to the trial court. The holding was approved and adopted by the Supreme Court in *State v. Stuart and Jones,* 223 Kan. 600. Subsequent to those decisions, the legislature has made clear that suspension of sentence is not an available disposition where K.S.A. 1980 Supp. 21-4618 applies. L. 1979, ch. 94, § 1; K.S.A. 1980 Supp. 21-4618.

"It is the clear legislative intent of K.S.A. 1979 Supp. 21-4618 to *divest the trial court of alternatives* to sentencing when a firearm is used by a defendant in the commission of one of the crimes specified in the statute." *State v. Ramsey,* 228 Kan. 127, 135, 612 P.2d 603 (1980). (Emphasis added.)

With a presently immaterial exception for minimum sentences for terms of or totaling 15 years or more, K.S.A. 1977 Supp. 22-3717(8) provided that a defendant sentenced as required by

K.S.A. 1977 Supp. 21-4618 was not eligible for parole prior to his service of the entire minimum sentence imposed. That continues to be the statutory law. K.S.A. 1980 Supp. 22-3717(2)(D); L. 1981, ch. 156, § 2.

In summary, when a firearm is used by a defendant in his commission of the crime of rape, the crime of aggravated sodomy or *any* crime set out in Article 34 of Chapter 21 of the Kansas Statutes Annotated, it is required that the minimum authorized sentence of imprisonment for the crime committed be *imposed* and *served.* The sole exception concerns the service of sentences of imprisonment for terms of or totaling 15 years or more. See K.S.A. 1980 Supp. 22-3717(2)(D) and (2)(A).

"[W]hether a defendant used a firearm in the commission of an Article 34 offense is a matter to be determined by the trial judge at the time of sentencing." *State v. Mullins,* 223 Kan. 798, 801, 577 P.2d 51 (1978).

When determining whether the defendant used a firearm in the commission of one of the crimes specified in K.S.A. 1980 Supp. 21-4618, "the trial court may not disregard the evidence in order to circumvent the operation of the statute. The purpose of the statute would be totally emasculated if a trial court could avoid its operation by simply concluding that a defendant did not use a firearm in the commission of a crime even though the evidence unequivocally established otherwise." *State v. Ramsey,* 228 Kan. at 135.

The evidence unequivocally and indisputably establishes that the conduct for which defendant stands convicted of aggravated assault involved the use of a firearm. Aggravated assault is one of the crimes set out in Article 34 of Chapter 21 of the Kansas Statutes Annotated. The April 17, 1978, disposition of the aggravated assault conviction by suspension of sentence was unlawful. *State v. Rios,* 225 Kan. 613, 614, 592 P.2d 467 (1979). By operation of statute, the *only* disposition available to the trial judge was to sentence defendant to serve an indeterminate term of imprisonment, the minimum of which he was to fix at not less than one year nor more than three years and the maximum of which would be ten years. The trial judge had no authority to grant probation or to suspend sentence. The Kansas Adult Authority has no authority to grant parole prior to one year's service of imprisonment by defendant.

The defendant must serve at least one year in prison. As noted

by the prosecution the statutory law as enacted by the legislature requires this result regardless of the circumstances—one of which is that there was no physical harm to the victim. This is in contrast to a case where the victim is left dead or seriously injured through the use of any weapon other than a firearm. Under those facts, a trial judge may grant probation or suspend sentence and the Kansas Adult Authority may grant parole to an imprisoned defendant after 120 days from the date the conviction and sentencing is final. K.S.A. 1980 Supp. 21-4603(2); K.S.A. 1980 Supp. 22-3717(2)(B) and (C).

The trial judge did not err.

Affirmed.