No. 62,198

STATE OF KANSAS, *Appellee*, v. BOBBY HAMMON, *Appellant*.

(781 P.2d 1063)

Opinion filed October 27, 1989.

*Charles A. O'Hara*, of O'Hara, O'Hara & Tousley, of Wichita, argued the cause and was on the brief for appellant.

*Debra S. Byrd*, assistant district attorney, argued the cause and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

HERD, J.: This is a criminal case. Bobby Hammon appeals his jury convictions of two counts of rape, K.S.A. 21-3502. He was sentenced to 5 to 20 years on count one and to a consecutive term of 15 years to life on count two.

F.M., the victim, was 71 years old when she was attacked by Hammon on May 4, 1987. She and Hammon were on friendly terms at the time. Hammon drove the Metropolitan Transit Authority's bus for the handicapped, which F.M. rode to and from her job. F.M. made a habit of sitting in the front of the bus

near Hammon so they could converse during the trip. She often brought him small presents of candy or coffee in the morning when she got on the bus. Hammon used such tokens of friendship in support of his contention that he and F.M. had been having an affair and that his acts were consensual. F.M. denied this.

F.M. testified she was the last rider on the bus on the afternoon of May 4, 1987, and she agreed to let Hammon come into her house and use her bathroom. She testified that when he came out of the bathroom, he grabbed her, forced her into the bedroom, tore off her clothing, and threw her on the bed in spite of her protestations. He undressed from the waist down, and, according to F.M.'s testimony at trial, "[H]e just tried to do that to me and I been operated on so many times and sewed up there just was no way." The State asked, "Did he penetrate your vagina with his penis?" and F.M. answered, "No. Just—he couldn't. It just tore." The State then asked, "What did he tear your vagina with?" She replied, "Well, his penis. And then he used his hands." The questioning continued, "Was he able to achieve full penetration into your vagina?" "No." "Did he achieve any penetration?" "Enough that he tore and got in a little ways."

Following the incident, F.M. did not tell anyone what had happened. She testified she had no other way to ride to work and was afraid that if she complained she might lose the service. The next morning, F.M. caught a ride to work, but rode the bus home in the afternoon. Hammon asked, "Are you mad at me?" and she said, "Yes, I am." F.M. testified she told Hammon, "Bob, there is a lot of women out there. Please don't bother me no more. Please go get somebody else. If you got to have somebody don't pick on me no more."

F.M. stated she continued to ride the bus with no problems for the next several weeks. She said Hammon was "just as nice as could be" after she talked to him. Hammon presented witnesses who reported F.M. continued to sit near the front of the bus and talk to Hammon with no apparent fear.

On July 21, 1987, Hammon again asked F.M. if he could use her bathroom at the end of the route. She agreed, because she "thought he'd got over it." This time Hammon came out of the bathroom "with his britches all undone." When he could not unbutton the protesting F.M.'s jeans, he forced her to touch his

penis while he reached his hand down her jeans. F.M. testified, "[H]e reached in there with his hand and tore me up in my vagina again." The State asked, "When you say 'he reached his hands down inside you' what part are you talking about?" F.M. replied, "Ran his fingers into my vagina and hurt me again." She said Hammon suddenly dressed and left, saying he would be back later.

After he left, F.M. cried and then decided to call a family friend who checked on her almost daily. She told the friend, Richard DeForest, what had happened, and he urged her to call the police. When he learned the next day that she had not done so, he contacted them himself. He also contacted F.M.'s supervisor and told her of the incidents. The supervisor asked F.M. if she had had any problems with her ride to work, and she said she had not. Only after the supervisor said she had received a call from DeForest did F.M. repeat her version of the events.

Officer Jose Serrano was sent to F.M.'s home to investigate an attempted rape report. Serrano reported that F.M. said Hammon touched her vagina with his fingers. Serrano said that F.M. had stated another incident had occurred about six weeks earlier where Hammon forced her to have intercourse but was too big to penetrate her. Serrano testified the victim could not remember the exact date of this previous incident.

Detective Paul Holmes and the nurse who examined F.M. both testified F.M. said Hammon had assaulted her using his finger in her vagina. They both testified she told them of the earlier incident when he forced his penis in her vagina, causing tearing.

Hammon testified in his own behalf that he and F.M. had been carrying on a sexually intimate relationship and that she had consented to his actions on May 4 and July 21. He said he and F.M. went to bed May 4 and she wanted him to go ahead and climax quickly because it was uncomfortable. On cross-examination, Hammon testified he had had consensual sexual intercourse with F.M. during the first part of May, the event she remembered as occurring on May 4. He said they had also had "partial intercourse" at an earlier date.

Regarding the July 21 incident, Hammon testified F.M. "fondled [my genitals] and I touched hers." On cross-examination, the State asked whether he had placed his finger in her vagina.

Initially, Hammon could not remember and then concluded he had not. Upon redirect examination, however, Hammon stated they were touching each other's genitals.

The jury found Hammon guilty of two counts of rape on December 1, 1987. This appeal followed.

The first issue is whether the court erred in failing to instruct the jury on the lesser included crime of attempted rape. Hammon did not request the instruction at trial, but now contends the instruction should have been given on both counts.

"Rape is sexual intercourse with a person who does not consent to the sexual intercourse, . . . (a) [w]hen the victim is overcome by force or fear." K.S.A. 21-3502(1)(a). " 'Sexual intercourse' means any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse." K.S.A. 21-3501(1). Attempted rape is "any overt act toward the perpetration of [the crime of rape] done by a person who intends to commit [the crime of rape] but fails in the perpetration thereof or is prevented or intercepted in executing [the crime of rape.]" K.S.A. 21-3301(a). Attempted rape is a lesser included crime of rape. *State v. Bishop*, 240 Kan. 647, 654, 732 P.2d 765 (1987).

K.S.A. 21-3107(3) provides: "In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced." Pursuant to this statute, the trial court was required to instruct on attempted rape if there was evidence upon which Hammon might reasonably have been convicted of that crime. See *State v. Galloway*, 238 Kan. 415, 416, 710 P.2d 1320 (1985).

In determining whether an instruction on attempted rape should be given, it must be remembered that mere contact with the genitals is insufficient to prove rape. Proof of actual penetration is necessary, although even the slightest penetration is sufficient. See *State v. Bishop*, 240 Kan. at 654.

Hammon argues the instruction should have been given on count one, because F.M. reported to Officer Serrano and testified at trial that Hammon did not penetrate her on May 4 because he was too large. However, in reviewing her testimony, it is clear F.M. testified that Hammon was not able to *fully* penetrate her

vagina. That there was some penetration was clear by her testimony that he penetrated enough to cause tearing and pain. The defendant clearly believed there had been penetration; Hammon's defense was that the sexual intercourse had been consensual. Hammon's argument as to count one is thus without merit. Where the only evidence presented proves penetration, the crime of rape is complete and there is no basis for instructing on attempted rape. See *State v. Grauerholz,* 232 Kan. 221, 230, 654 P.2d 395 (1982).

Count two is more difficult, but F.M.'s statements, taken as a whole, support the conclusion that Hammon penetrated her vagina with his finger, even though her statement to the investigating officer was ambiguous. Hammon testified he did not think he had put his finger in the victim's vagina. Later, he testified he could have but he did not remember doing so. A criminal defendant is entitled to have his theory of the case presented to the jury under appropriate instructions where there is any evidence to support it. *State v. Moore,* 220 Kan. 707, 709, 556 P.2d 409 (1976). An instruction on lesser included offenses should be given even where the evidence supporting the lesser offense is weak and inconclusive. *State v. Staab,* 230 Kan. 329, 339, 635 P.2d 257 (1981).

In *State v. Garcia,* 233 Kan. 589, 610, 664 P.2d 1343 (1983), however, we held the standard in determining whether a trial court should have instructed on a lesser included offense is not whether there is *any* theory upon which the defendant would be found innocent, but whether there is evidence upon which the defendant could *reasonably* be convicted of the lesser crime. Here, F.M. testified Hammon forcibly penetrated her vagina with his finger. Hammon testified he did not remember doing so. Thus, there was no evidence to support attempted rape. This issue is without merit.

The second issue is whether the trial court abused its discretion in refusing to grant a mistrial following Hammon's mention of a polygraph examination during cross-examination.

The statement which Hammon argues prejudiced him occurred while the State was cross-examining him about the May 4 occurrence:

"Q.: And it's your testimony that she told you that it was a little uncomfortable, is that correct?

. . . .

"Q.: Did you not testify to that on direct, sir?

"A.: Yes, I did.

. . . .

"Q.: Isn't it true that she said that it hurt but to go ahead. Isn't that what you said. Didn't she tell you that it hurt?

"A.: "I don't remember ever making that statement that it hurt. She said it was uncomfortable.

"Q.: You don't recall previously in a conversation that you had with John Green telling him that [F.M.] told you that it hurt?

"A.: Who is John Green?

"Q. K.B.I. Agent.

"A.: I don't know that I put it in that word.

. . . .

"Q.: Do you recall using the words 'take it out deeper' with Agent John Green?

"A.: Referring to what?

"Q.: To go ahead. That that is what [F.M.] wanted for you to take it out deeper.

"A.: I did not state that referring to that.

"Q.: What were you referring to?

"A.: I think he and I and [defense counsel] had said something prior to set on the polygraph and I can't remember just what brought it up. In other words, I told him I was kind of evasive talking so point blank in front of my lawyer."

At this point, defendant moved for a mistrial. The court denied the motion, noting Hammon had voluntarily commented on the polygraph examination. Pursuant to the request of both the State and defendant, the court did not admonish or instruct the jury to disregard Hammon's statement about the polygraph.

Hammon contends the trial court erred in not granting his motion for a mistrial because the State induced his reference to the polygraph examination. It is well established that the results of a polygraph examination are too unreliable to be admissible at trial absent a stipulation by the parties. The fact that a polygraph examination was administered, however, does not render all evidence arising from that examination inadmissible per se. *State v. Blosser*, 221 Kan. 59, Syl. ¶ 3, 558 P.2d 105 (1976).

It is also well established that the admission of otherwise inadmissible evidence does not automatically warrant a mistrial. K.S.A. 22-3423(1) provides: "The trial court may terminate the trial and order a mistrial at any time that [it] finds termination is necessary because: . . . (c) [p]rejudicial conduct, in or outside the courtroom, makes it *impossible* to proceed with the trial without injustice to either the defendant or the prosecution." (Emphasis supplied.)

The decision whether to grant a mistrial rests within the sound

discretion of the trial court and that decision will not be set aside on appeal unless an abuse of discretion is clearly shown. Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. In showing that a trial court abused its discretion in failing to grant a mistrial, a defendant has the burden of proving he was substantially prejudiced by the trial court's decision. *State v. Massey,* 242 Kan. 252, 264, 747 P.2d 802 (1987).

Here, the State was entitled to inquire about any statements Hammon made during the course of the polygraph examination for the purpose of impeaching his credibility with a prior inconsistent statement. See *State v. Blosser,* 221 Kan. 59. In the course of that questioning, the State did not ask about the polygraph examination or the examination results. Rather, the polygraph was mentioned once by Hammon in a nonresponsive reply to one of the State's questions. There is no indication Hammon's voluntary comment was induced by the State's question. The issue is without merit.

The final issue is whether there was sufficient evidence to support Hammon's conviction. Where a criminal defendant claims insufficiency of the evidence, the appellate court is required to review all the evidence in the light most favorable to the prosecution in determining whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Switzer,* 244 Kan. 449, Syl. ¶ 1, 769 P.2d 645 (1989).

Hammon contends the evidence was insufficient to support his conviction because F.M. did not report the first incident for over two months and maintained contact with him between the incidents. He notes that there was no physical evidence to prove F.M. had been raped and argues her testimony supports only a conviction of attempted rape. We disposed of this argument in the first issue. The argument of insufficient force is without merit—F.M. testified Hammon forced himself on her without her consent during both incidents. This is sufficient to prove the elements of rape. K.S.A. 21-3502.

Finally, Hammon contends there was evidence the victim was not telling the truth; however, the jury believed the victim. It is not our function to determine the credibility of witnesses. *State v. Nunn,* 244 Kan. 207, 220, 768 P.2d 268 (1989).

As we stated in *State v. Cantrell,* 234 Kan. 426, 429, 673 P.2d 1147 (1983), *cert. denied* 469 U.S. 817 (1984), " 'The testimony of the prosecutrix need not be corroborated to sustain a conviction for rape in this state; there may be a conviction on the uncorroborated evidence of the prosecutrix if it is believed by the jury.' " It is the jury's prerogative to determine the weight to be given to the evidence, the reasonable inferences to be drawn from the evidence, and the credibility of the witnesses. *State v. Pondexter,* 234 Kan. 208, 215, 671 P.2d 539 (1983). There was sufficient substantial competent evidence to support the verdict of the jury. This issue is meritless.

The judgment is affirmed.

SIX, J., not participating.